<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> CHRISTOPHER J. GALLO and MEHMET ALI ELMAS, <br><br> Defendants. | Case No. 2:24-cr-00712 (BRM) <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is the United States of America's (the "Government") Motion for a Protective Order concerning the disclosure and use of discovery materials to be produced by the Government pursuant to Federal Rule of Criminal Procedure 16(d)(1). (ECF No. 57.) Defendant Christopher J. Gallo ("Gallo") filed an Opposition to the Government's Motion. (ECF No. 58.) Having reviewed the submissions filed in connection with the Government's Motion, for the reasons set forth below and for good cause having been shown, the Government's Motion for a Protective Order is **GRANTED, as modified** by Gallo's proposed form of Order.

**I.   BACKGROUND**

On or about April 23, 2024, Gallo was charged, along with co-defendant Mehmet Ali Elmas ("Elmas") (together with Gallo, "Co-Defendants"), in a one-count criminal complaint (the "Complaint") with conspiracy to commit bank fraud, contrary to 18 U.S.C. § 1344, in violation of 18 U.S.C. §1349. (ECF No. 1.) The Complaint alleges that from around 2018 through October 2023, Gallo was a senior loan officer at a New Jersey-based privately owned licensed residential financial institution (the "Financial Institution"). (*Id.* at 2–3.) In that role, Gallo allegedly

originated more than $1.4 billion in loans for the Financial Institution. (*Id*. at 4.) During the relevant time, Elmas was employed as a loan officer and assistant to Gallo at the Financial Institution. (*Id*. at 3.) The Complaint alleges "[a]t various times since at least 2018," Co-Defendants "used their positions at the Financial Institution to conspire and engage in a fraudulent scheme to falsify loan origination documents sent to mortgage lenders . . . to obtain mortgage loans based on false and fraudulent pretenses, representations, and promises." (*Id*. at 4.)

Following the Government's motion to continue and exclude time, the Court entered an Order granting a continuance through March 31, 2025. (ECF No. 55.) The Order further declared that the Government must produce all discovery on or before January 31, 2025, and that Co-Defendants must produce all discovery on or before March 3, 2025. (*Id*.) In anticipation of meeting its discovery obligations, the Government filed a Motion for a protective order on January 14, 2025. (ECF No. 57.) Gallo filed a response to the Motion on January 17, 2025, advising that Gallo "do[es] not conceptually object to the entry of a Protective Order, [but] propos[ing] an Order with a slightly narrower scope and breadth of coverage." (ECF No. 58.) The Government did not file a reply.

## II.    LEGAL STANDARD

Federal Rule of Criminal Procedure 16 entitles a defendant to relevant discovery. However, Rule 16(d)(1) provides that courts "may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." To establish good cause, the proponent must demonstrate "that disclosure will work a clearly defined and serious injury." *United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007) (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)). "The injury must be shown with specificity. Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not support a good cause

showing." *Pansy*, 23 F.3d at 786–87 (internal quotation marks and citations omitted). "The good cause determination must also balance the public's interest in the information against the injuries that disclosure would cause." *Wecht*, 484 F.3d at 211 (citing *Pansy*, 23 F.3d at 786–87). In determining whether to impose, courts generally consider a number of factors, including

> (1) the interest in privacy of the party seeking protection; (2) whether the information is being sought for a legitimate purpose or an improper purpose; (3) the prevention of embarrassment, and whether that embarrassment would be particularly serious; (4) whether the information sought is important to public health and safety; (5) whether sharing of the information among litigants would promote fairness and efficiency; (6) whether the party benefitting from the order of confidentiality is a public entity or official; and (7) whether the case involves issues important to the public.

*Arnold v. Pa. Dep't of Transp.*, 477 F.3d 105, 108 (3d Cir. 2007) (repeating factors known commonly as the "*Pansy* factors").

With these principles in mind, the Third Circuit has endorsed the use of umbrella protective orders to manage the production of voluminous sensitive information. *See id*. (citing *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1112 (3d Cir. 1986)). "An umbrella protective order acknowledges that certain specific categories of information qualify, in the first instance, as presumptively confidential and thus good cause exists under the standards enunciated by the Third Circuit in *Pansy* and reiterated in *Wecht* to include them in the proposed protective order." *United States v. Farese*, Crim. No. 21-00877, 2022 WL 788880, at *3 (D.N.J. Mar. 15, 2022).

When using an umbrella protective order:

> It is correct that the burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the protective order; any other conclusion would turn Rule 26(c) on its head. That does not mean, however, that the party seeking the protective order must necessarily demonstrate to the court in the first instance on a document-by-document basis that each item should be protected. It is equally consistent with the proper allocation of evidentiary burdens for the

> court to construct a broad "umbrella" protective order upon a threshold showing by one party (the movant) of good cause. Under this approach, the umbrella order would initially protect all documents that the producing party designated in good faith as confidential. After the documents delivered under this umbrella order, the opposing party could indicate precisely which documents it believed to be not confidential, and the movant would have the burden of proof in justifying the protective order with respect to those documents. The burden of proof would be at all times on the movant; only the burden of raising the issue with respect to certain documents would shift to the other party.

*Cipollone*, 785 F.2d at 1122.

### III. DECISION

The Government seeks a protective order regarding discovery materials "to facilitate the prompt exchange of discovery materials to the defense, while protecting privacy rights of unrelated third parties and protecting from disclosure information about an ongoing investigation." (ECF No. 57 at 3.) The Government contends "the discovery includes a wealth of PII," or personally identifiable information, "including subpoena records from banks, credit agencies, personnel files, mortgage loan files, and financial records." (*Id*.) The Government further notes there is good cause and a particular need for a protective order in this case, as "Gallo and Elmas have been charged with aggravated identify theft, so there are particular concerns regarding their misuse of PII." (*Id*.) Gallo agrees "that good cause currently exists for the entry of some form of Order." (ECF No. 58 at 1.) However, Gallo proposes a slightly modified form of Order "to reflect protections as requested by the [G]overnment but would only apply to P[I]I data and materials." (*Id*.)

The Court agrees with both parties that good cause exists here to enter a protective order regarding discovery materials. As noted by the Government, a protective order will facilitate the exchange of information that will undisputably contain a large quantity of PII. (*See* ECF No. 57 at 3.) The Court further agrees with the Government, and Gallo does not dispute, that the entry of a

4

protective order will not prejudice Gallo, as it "will not negatively impact Gallo's ability to prepare a defense." (*Id*. at 4.)

Nonetheless, the Court will adopt Gallo's proposed form of Order, which the Court notes is nearly identical to the proposed form of Order submitted by the Government, with the exception that Gallo's proposed Order clarifies that "Disclosure Materials *containing PII* shall not be disclosed." (ECF No. 58, Ex. 1 at 2 (emphasis added).) The Court finds that this language effectuates the same goal the Government seeks while not unnecessarily limiting the disclosure of documents not containing PII. Moreover, based on the Motion, it is clear that the Government seeks a protective order to prevent the disclosure of PII, for which Gallo's proposed form of Order explicitly provides.[1] Therefore, the Government's Motion for a Protective Order is **GRANTED**.

### IV.   CONCLUSION

For the above reasons, the Government's Motion for a Protective Order is **GRANTED as modified** by Gallo's proposed form of Order. An appropriate Order follows.


**Date: February 4, 2025**               */s/ Brian R. Martinotti*
                                                                                  **HON. BRIAN R. MARTINOTTI**
                                                                                  UNITED STATES DISTRICT JUDGE

---

[1] The Court also notes that the Government did not file a reply to Gallo's Opposition.