UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>CHRISTOPHER J. GALLO and<br>MEHMET ALI ELMAS. | CRIMINAL NO. 24-712 |

**DEFENDANT CHRISTOPHER J. GALLO'S MOTION TO DISMISS COUNT EIGHTEEN OF THE INDICTMENT**

*Attorney for Defendant, Christopher J. Gallo*

**COLE SCHOTZ, P.C.**
Michael S. Weinstein, Esq.
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey
07602-0800
201-489-3000 Phone
201-489-1536 Facsimile

67775/0001-49816964

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................................ ii

PRELIMINARY STATEMENT ...................................................................................................... 1

RELEVANT FACTUAL BACKGROUND..................................................................................... 2

LEGAL ARGUMENT....................................................................................................................... 3

    I.     LEGAL STANDARD ON A MOTION TO DISMISS AN INDICTMENT
          FOR FAILURE TO STATE AN OFFENSE ........................................................... 3

    II.    COUNT EIGHTEEN OF THE GOVERNMENT'S INDICTMENT
          (AGGRAVATED IDENTITY THEFT UNDER 18 U.S.C. § 1028A)
          SHOULD BE DISMISSED ....................................................................................... 3

          A.     The Indictment Fails to State an Offense Under 18 U.S.C. § 1028A
               Because the Identity Was Not at the Crux of the Alleged Fraud. ................ 3

          B.     The Indictment Fails to State an Offense Under 18 U.S.C. § 1028A
               Because the Use of the Identity Was Merely Representative of the
               Property Management Company for the Safety Attestation. ....................... 8

CONCLUSION .................................................................................................................................. 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Dubin v. United States*,
    599 U.S. 110 (2023) ................................................................................................ 1, 4-8

*Neder v. United States*,
    527 U.S. 1 (1999) ............................................................................................................ 6

*United States v. Brown*,
    No. 23-1819, 2024 WL 1991461 (3d Cir. May 6, 2024) ................................................ 5

*United States v. Diarra*,
    2025 WL 342195 (3d Cir. Jan. 30, 2025) ....................................................................... 5

*United States v. Haack*,
    2025 WL 586039 (D.N.M. Feb. 24, 2025) .................................................................. 8, 9

*United States v. Hodge,* 211 F.3d 74, 76 (3d Cir. 2000) .................................................... 3

*United States v. Johnston*,
    2024 WL 4570681 (D.N.J. Oct. 24, 2024) ..................................................................... 5

*United States v. Mosberg*,
    866 F. Supp. 2d 275 (D.N.J. 2011) ................................................................................. 3

*United States v. Noble*,
    713 F. Supp. 3d 1366 (N.D. Ga. 2024) .......................................................................... 7

*United States v. Omotayo*,
    132 F.4th 181 (2d Cir. 2025) .......................................................................................... 6

*United States v. Omotayo*,
    2025 WL 865136 (Mar. 20, 2025) .................................................................................. 7

*United States v. Ovsepian*,
    113 F.4th 1193 (9th Cir. 2024) ....................................................................................... 7

*United States v. Reed*,
    350 F. App'x 675 (3d Cir. 2009) .................................................................................... 6

*United States v. Sheppard*,
    2024 WL 2815278 (S.D. Fla. June 3, 2024) ................................................................... 7

*United States v. Vargas*,
    629 F. App'x 415 (3d Cir. 2015) ..................................................................................6

*United States v. Vitillo,* 490 F.3d 314, 321 (3d Cir. 2007) .............................................................3

**Statutes**

18 U.S.C. § 1028A................................................................................................................ *passim*

18 U.S.C. §1028A(a)(1)..................................................................................................... 3, 4, 8

18 U.S.C. § 1028A(c)(5) .............................................................................................................4

18 U.S.C. §1159...........................................................................................................................8

18 U.S.C. §1341...........................................................................................................................8

18 U.S.C. §1343...........................................................................................................................8

18 U.S.C. § 1347 ..........................................................................................................................4

18 U.S.C. § 1349 ..........................................................................................................................6

**Other Authorities**

*Fed. R. Crim. P.* 12(b)(3)(B)(v) ...................................................................................................3

67775/0001-49816964

## **PRELIMINARY STATEMENT**

In *Dubin v. United States*, 599 U.S. 110, 120-132 (2023), in a supermajority opinion, the United States Supreme Court meaningfully limited what may constitute aggravated identify theft under 18 U.S.C. § 1028A. The Supreme Court majority made clear that Section 1028A, a serious offense with a mandatory two-year minimum penalty, can no longer be read broadly and "boundless" as the government has charged it here against Mr. Gallo. Now, post-*Dubin*, it is not enough that another person's means of identification was used to facilitate a predicate criminal offense—it must be "at the crux of" what makes the predicate offense criminal. *Id.* at 113.

Here, the government has gone well beyond the new, permissible limits of *Dubin*. Even taken as true, the government alleges only an ancillary use of a name and signature on a letter that allegedly falsely attested to the safety of a condo balcony to facilitate a mortgage loan application for the property. Additionally, beyond the identity being merely ancillary, the name and signature were merely represented of the source of the safety statement—the property management company—and therefore it fails to constitute use of another's identifying information for purposes of the aggravated identity theft statute. Consequently, count Eighteen of the Indictment must be dismissed.

**RELEVANT FACTUAL BACKGROUND**

In April 2024, the government indicted Mr. Gallo and his co-defendant in Counts One through Seventeen of the Indictment with bank fraud, conspiracy to commit bank fraud and false statements to a financial institution. The government alleges that from 2018 through October 2023, Mr. Gallo and his co-defendant made false or fraudulent representations to banks to facilitate mortgage loan approvals, including information regarding the prospective borrowers' financial information and building safety information. It remains at present no damages from the alleged conduct.

In Count Eighteen of the Indictment, the government alleges that Mr. Gallo and his co-defendant "did knowingly transfer, possess, and use, without lawful authority, a means of identification of another person, namely, the name, title, and electronic signature of the Victim Property Manager, during and in relation to . . . conspiracy to commit bank fraud." ECF No. 44 at 12. Specifically, the government alleges that the mortgage loan application for Property-1 "had been previously rejected . . . because Property-1, a condominium, was in the process of conducting repairs on Property-1's balconies." *Id.* at 7. According to the government, because the repairs were still under way, the property management company would not provide a letter "stating that the balconies were safe to be used." *Id.* The government alleges that Mr. Gallo and his co-defendant forged a letter "attesting to the safety of the balconies" that was "on Property-1 letterhead" and contained the property manager's name and electronic signature. *Id.* The government alleges that the safety letter was submitted with the loan application package on August 9, 2022 and that the loan was subsequently approved on August 18, 2022. Upon information and belief, after approval, the loan was never in default, nor ownership of the property suffer any adverse impact from the alleged balcony submission. At some point prior to today's filing, the property was sold and the mortgage was properly and successfully fully satisfied.

# LEGAL ARGUMENT

## I. LEGAL STANDARD ON A MOTION TO DISMISS AN INDICTMENT FOR FAILURE TO STATE AN OFFENSE

Pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B)(v), a defendant may move to dismiss the Government's indictment due to its failure to state an offense. *Fed. R. Crim. P.* 12(b)(3)(B)(v). When deciding a motion to dismiss, a court will review the indictment to determine whether it:

> (1) contains the elements of the offenses intended to be charged, (2) sufficiently apprise[d] the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution.

*United States v. Mosberg*, 866 F. Supp. 2d 275, 286-87 (D.N.J. 2011) (quoting *United States v. Vitillo,* 490 F.3d 314, 321 (3d Cir. 2007)) (alteration in original) (quotation marks omitted). "All facts alleged in the indictment must be taken as true, and the court is to employ a 'common sense construction' thereof." *Id*. (citing *United States v. Hodge,* 211 F.3d 74, 76 (3d Cir. 2000)). "An indictment may not merely recite the essential elements of the offense charged, it must allege specific facts that fall within the scope of the relevant criminal statute." *Id*. (citing *Vitillo*, 490 F.3d at 321).

## II. COUNT EIGHTEEN OF THE GOVERNMENT'S INDICTMENT (AGGRAVATED IDENTITY THEFT UNDER 18 U.S.C. § 1028A) SHOULD BE DISMISSED

### A. The Indictment Fails to State an Offense Under 18 U.S.C. § 1028A Because the Identity Was Not at the Crux of the Alleged Fraud.

Section 1028A(a)(1), Aggravated Identity Theft, provides that:

> [w]hoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years.

18 U.S.C. § 1028A. A "felony violation enumerated in subsection (c)" is defined, in pertinent part, as "any provision contained in chapter 63 (relating to mail, bank, and wire fraud)[.]" 18 U.S.C. § 1028A(c)(5). In other words, Section 1028A(a)(1) is applicable when a defendant (1) "knowingly transfers, possesses, or uses… a means of identification of another person," (2) "without lawful authority," (3) "during and in relation to any predicate offense." *Dubin v. United States*, 599 U.S. 110, 124-25 (2023) (internal quotations and alterations omitted).

Prior to the Supreme Court's holding in *Dubin*, the government charged aggravated identity theft where defendant allegedly used "a means of identification 'in relation to a predicate offense' if the use of that means of identification 'facilitate[d] or further[ed]' the predicate offense in some way." *Id.*, at 115-117 (citations omitted). The Supreme Court has now directly rejected that expansive reading of the aggravated identity theft statute and made clear that the government can no longer apply Section 1028A anytime a means of identification is used in the commission of a crime. *See id.* at 116-117.

In *Dubin*, the defendant was convicted of healthcare fraud under 18 U.S.C. § 1347 for overbilling Medicaid for psychological testing by misrepresenting that the tests were performed by a licensed psychologist, where, in fact, the tests were performed by a lesser qualified psychological associate. *Id.* at 114. The defendant was also convicted of aggravated identity theft under 18 U.S.C. §1028A(a)(1) because the fraudulent Medicaid billing also included the patients' Medicaid identification numbers. *Id.* at 114-115. In vacating the conviction, the Supreme Court explained that Section 1028A requires that the means of identification itself be used to defraud and cannot be used in an ancillary way. *See id.* at 122-123 (explaining that to use "in relation to" requires that the identification have a central role in the criminality). "A defendant 'uses' another person's means of identification 'in relation to' a predicate offense when this use is at the crux of

4

what makes the conduct criminal." *Id.* at 131-132. "[B]eing at the crux of the criminality requires more than a causal relationship, such as 'facilitation' of the offense or being a but-for cause of its 'success.'" *Id.* (citations omitted). The "fraud or deceit going to identity can often be succinctly summarized as going to 'who' is involved." *Dubin*, 599 U.S. at 132.

In concluding that aggravated identity theft requires a narrow reading of the statute, the Supreme Court also noted the surrounding context of Section 1028A. The title "aggravated" (in contrast to the broad title of Section 1028) reflects Congress's intent that Section 1028A does not apply to "all fraud involving means of identification" and instead invokes the typical understanding of an "aggravated offense" that is made worse by its serious circumstances. *Id.* at 121-123. Additionally, Section 1028A adds a severe enhancement of a two-year mandatory prison sentence to offenses that would otherwise not have one, signaling that it should not be applied to general offenses. *Id.* at 128-129.

The allegations against Mr. Gallo fall squarely within the unacceptable overreach identified in *Dubin* and are similar to allegations that other jurisdictions have determined fail to meet the "at the crux of" test in *Dubin*.[1] For underlying offenses alleging fraud, the "at the crux" test requires that (1) the means of identification was a "'key mover' in the predicate crime"; (2) there is "more

---

[1] The United States District Court for the District of New Jersey has not yet had the opportunity to apply Section 1028A post-*Dubin*. Nonetheless, it has set the stage for a post-*Dubin* analysis of aggravated identity theft. In *United States v. Johnston*, No. 20-CR-00800-ESK, 2024 WL 4570681 (D.N.J. Oct. 24, 2024), the Court noted in dicta that *Dubin* is binding precedent that requires that Section 1028A be read narrowly. *See Johnston*, 2024 WL 4570681, *1 (declining to extend *Dubin* to a conspiracy charge under Section 1028, and noting that *Dubin* requires a narrow reading of Section 1028A for aggravated identity theft). Nor does the Court have Third Circuit guidance for allegations of identity theft like those against Mr. Gallo. In contrast, the Third Circuit has only addressed what *Dubin* identified as the "classic identity theft." *See United States v. Diarra*, No. 22-3232, 2025 WL 342195, *2 (3d Cir. Jan. 30, 2025) (using another's identity to access his bank account); *United States v. Brown*, No. 23-1819, 2024 WL 1991461 (3d Cir. May 6, 2024) (using others' names to activate their credit cards and use them to make purchases).

than a causal relationship" and the fraud did not merely facilitate the offense; and (3) the "fraudulent use must be 'at the locus of the criminal undertaking, rather than merely passive, passing, or ancillary employment in a crime.'" *United States v. Omotayo*, 132 F.4th 181, 194 (2d Cir. 2025) (quoting *Dubin*, 599 U.S. at 122-23, 131-32).

Count Eighteen falls woefully short of *Dubin*'s "at the crux" test. The government's aggravated identity theft charge asserts "conspiracy to commit bank fraud" as the predicate offense." *See* ECF No. 44 at 12. "[T]he elements of conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349, . . . requires that: (1) two or more persons agreed to commit bank fraud; (2) the defendant knowingly and voluntarily joined in the conspiracy; and (3) a member of the conspiracy performed an overt act for the purpose of advancing the conspiracy." *United States v. Reed*, 350 F. App'x 675, 678 (3d Cir. 2009). Bank fraud requires a showing that the defendant "knowingly execut[ed], or attempt[ed] to execute, a scheme or artifice—(1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." *United States v. Vargas*, 629 F. App'x 415, 418 (3d Cir. 2015). The fraudulent representations must be material to the bank's decision to grant the loan. *See Neder v. United States*, 527 U.S. 1, 25 (1999).

In Count Eighteen, the government alleges that the Defendant signed "the name, title and electronic signature" of a property manager on a letter that falsely attested to the safety of balconies at the property for which Defendant's client sought a bank loan. ECF No. 44 at 12. The government alleges that the lending institution had previously rejected a mortgage application for the property because repairs to the balconies were still underway at the time of the application. *Id.* at 7-8. According to the government, the falsified letter regarding the safety of the balcony was

included in the loan application package "to facilitate approval of the mortgage loan." *Id.* at 8. Although the government alleges that the loan was subsequently approved and insinuates that the loan application was approved because of the safety attestation, even assuming that the letter facilitated approval, there is no evidence, nor does the government even allege, that the bank relied on the identity of the property manager in determining to approve the loan. Under the government's own allegations, the safety assertions, not the identity of the signer of the letter, was the "crux" of the fraud. *See United States v. Omotayo*, No. 22-1035, 2025 WL 865136, *12 (Mar. 20, 2025) ("[F]or Section 1028A to be violated in this setting, it is not the invoice that must be 'at the crux' of the fraud, but the 'means of identification'—here, Roytman's name."); *United States v. Noble*, 713 F. Supp. 3d 1366, 1368-69 (N.D. Ga. 2024) (granting the defendant's request, based on *Dubin*, to withdraw his guilty plea for aggravated identity theft for submitting fraudulent loan applications using other people's names and misrepresented facts about their businesses); *United States v. Sheppard*, No. 22-CR-20290, 2024 WL 2815278, at *7 (S.D. Fla. June 3, 2024), *appeal filed*, No. 24-1207 (11th Cir. June 25, 2024) (vacating the defendant's aggravated identity theft convictions related to fraudulent loan applications to the government because "*Dubin* and binding Eleventh Circuit precedent require more than fraudulent use of a means of identification for the means of identification to be at the crux of the underlying offense."). The government does not allege that the name or signature on the letter was material to the representation or that the name had any import to the bank, much less that it was central to the fraud. *See id.*, *12-14 ("[W]e do not take *Dubin* to mean that any deceptive reference to a name, no matter how ancillary to the underlying crime, necessarily constitutes aggravated identity theft . . . 'the means of identification specifically [must be] a key mover in the criminality.'"); *see also United States v. Ovsepian*, 113 F.4th 1193, 1208 (9th Cir. 2024) (remanding to vacate aggravated identity theft charge where the

7

patient's means of identification was not at the crux of the conspiracy to commit healthcare fraud); *United States v. Haack*, No. 18-CR-928 MV, 2025 WL 586039, at *4 (D.N.M. Feb. 24, 2025). By the government's own account, the crux of the alleged fraud was the representation that the balcony was safe, and the specific name on the letter was merely ancillary to the alleged fraud.

> **B.** **The Indictment Fails to State an Offense Under 18 U.S.C. § 1028A Because the Use of the Identity Was Merely Representative of the Property Management Company for the Safety Attestation.**

Even if the government had not failed to allege that the property manager's identity on the letter went to the crux of the fraud, the government's allegations fail to establish aggravated identity theft post-*Dubin* for an additional reason. The identity itself must be at the nexus of the alleged fraud and specifically go to "'who' is involved." *See Dubin*, 599 U.S. at 132 at n.10; *United States v. Haack*, No. 18-CR-928 MV, 2025 WL 586039, at *4-7 (D.N.M. Feb. 24, 2025). In Count Eighteen, the government does not (and cannot now) allege any significance to the identity used in the predicate offense and the name and signature were merely used as representative of the property management company.

In *Haack*, the defendant was charged with wire fraud in violation of 18 U.S.C. §1343, mail fraud in violation of 18 U.S.C. §1341, violation of the Indian Arts and Crafts Act, 18 U.S.C. §1159 and aggravated identity theft in violation of 18 U.S.C. §1028A(a)(1) for using the signature of a prominent Hopi artist on a piece of counterfeit jewelry. *See id.*, at *1. The Court entered judgment of acquittal on the aggravated identity theft charge because "the evidence did not establish that Mr. Haack used the Loloma signature as the means of identification of Charles Loloma as an actual person." *See id.*, at *4. Rather, the defendant had inscribed the jewelry with a signature like Loloma's to "signal the source" of that jewelry (the Loloma studio). *Id.* The Court concluded that "neither the language of §1028A itself, nor the case law interpreting it, suggest that Congress

8

intended Aggravated Identity theft to reach such use of a signature for the purpose of (mis)identifying the source of a good." *Id.*, at *5.

Here, the use of the property manager's name and signature were used to indicate that the source of the representations regarding the safety of the balcony came from the property management company. Count Eighteen is devoid of any allegation that the fraudulent representations were specific to the individual name used. At most, the government alleges that Mr. Gallo and his co-defendant had attempted to obtain a statement from "Property-1 representatives" who would not provide a safety attestation, and therefore, the defendants prepared fraudulent safety letter on behalf of the property. This amounts to no more than an allegation that the use of the property manager's name was intended to signal to the bank that the source of the safety representation was the property company, which is not the use of another's identity for purposes of the aggravated identity theft statute. *See Haack*, 2025 WL 586039, at *4-7.

## CONCLUSION

Count Eighteen relies on an outdated and rejected interpretation of the Aggravated Identity Theft statute. For all the foregoing reasons, Defendant Christopher J. Gallo respectfully requests that his motion be granted and Count Eighteen of the Indictment be dismissed.

Respectfully submitted,

**COLE SCHOTZ P.C.**
*Attorneys for Defendant*
*Christopher J. Gallo*


By: */s/Michael S. Weinstein*
      Michael S. Weinstein, Esq.

DATED: April 14, 2025