**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>CHRISTOPHER J. GALLO and MEHMET ALI ELMAS,<br><br>Defendants. | Case No. 2:24-cr-00712 (BRM)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court are two motions: co-defendants Christopher J. Gallo ("Gallo") and Mehmet Ali Elmas ("Elmas") (together, "Co-Defendants") each filed their own respective Motion to Dismiss (ECF Nos. 74, 75) Count Eighteen of the Indictment (ECF No. 44), which charges Co-Defendants with Aggravated Identity Theft in violation of 18 U.S.C. § 1028A(a)(1). The United States of America (the "Government") filed an opposition to Co-Defendants' Motions (ECF No. 77), and Co-Defendants filed replies (ECF Nos. 78–79, 80). The parties appeared for oral argument on the Motions before this Court on June 3, 2025. (*See generally*, ECF No. 82.) Following oral argument, and with the Court's permission,[1] the Government filed a supplemental brief (ECF No. 85), and Co-Defendants each filed a reply (ECF Nos. 87, 88). Having reviewed and considered the submissions filed in connection with Co-Defendants' Motions, for the reasons set forth below and for good cause having been shown, the Co-Defendants' Motions to Dismiss Count Eighteen of the Indictment are **DENIED**.

---

[1] In part, because new counsel took over this matter for the Government on May 21, 2025—just before oral argument of these Motions. (*See* Notice of Appearance (ECF No. 81).)

**I.     BACKGROUND**

On or about April 23, 2024, Co-Defendants were charged in a one-count criminal complaint (the "Complaint") with conspiracy to commit bank fraud, contrary to 18 U.S.C. § 1344, in violation of 18 U.S.C. § 1349. (ECF No. 1.) The Complaint alleges that from around 2018 through October 2023, Gallo, as a senior loan officer at a New Jersey-based, privately owned licensed residential financial institution (the "Financial Institution"), originated more than $1.4 billion in loans for the Financial Institution. (*Id.*) During the relevant time, Elmas was employed as a loan officer and assistant to Gallo at the Financial Institution. (*Id.*) The Complaint alleges that "[a]t various times since at least 2018," Co-Defendants "used their positions at the Financial Institution to conspire and engage in a fraudulent scheme to falsify loan origination documents sent to mortgage lenders . . . to obtain mortgage loans based on false and fraudulent pretenses, representations, and promises." (*Id.*)

On October 24, 2024, a grand jury returned an eighteen-count indictment (the "Indictment") charging Co-Defendants with Conspiracy to Commit Bank Fraud in violation of 18 U.S.C. § 1349 (Count One); Bank Fraud in violation of 18 U.S.C. § 1344 (Counts Two through Nine); False Statement to a Financial Institution in violation of 18 U.S.C. § 1014 (Counts Ten through Seventeen); and Aggravated Identity Theft in violation of 18 U.S.C. § 1028A(a)(1) (Count Eighteen). (ECF No. 44.) Co-Defendants were arraigned on November 13, 2024. (ECF No. 45.) As part of the scheme, the Indictment alleges Co-Defendants and others routinely misled mortgage lenders "about the intended use of particular properties to fraudulently secure lower mortgage interest rates from mortgage lenders," by, specifically, "submitt[ing] loan applications falsely stating that the listed borrowers were the primary residents of certain properties when, in fact, those properties were intended to be used and were used as rental or investment properties." (ECF

2

No. 44 at 6.) In other instances, Co-Defendants "falsified and caused to be falsified property records, including building safety information and prospective borrowers' financial information, to facilitate mortgage loan approval." (*Id*. at 7.)

Specifically, with regard to Count Eighteen (Aggravated Identity Theft), the Government alleges "prospective borrowers did not know that their information was being falsified to facilitate loan approval." (*Id*.) The Government cites to an example wherein Co-Defendants forged a letter from one of the subject properties' property manager (the "Property Manager"). (*Id*.) The mortgage application had been previously rejected because there were repairs in progress to the property's (the "Property") balconies. (*Id*.) Because of the ongoing construction, the Property's representatives refused to provide Co-Defendants with a letter stating that the balconies were safe to be used and instead "advised that repairs were underway and would continue through in or around 2023." (*Id*.) Despite knowing this, Co-Defendants allegedly "subsequently agreed to create and did create the Forged Letter," which was "purportedly written by the [] Property Manager," "stating that the [Property's] balconies were safe to be used" "to facilitate approval of the mortgage loan." (*Id*. at 7–8.) The Indictment alleges the Forged Letter was on the Property's letterhead, contained the Property Manager's electronic signature, and attested to the safety of the balconies at the Property. (*Id*. at 8.) The Indictment continues to state that "Gallo sent the Forged Letter to Elmas to include as part of the loan application package for [the] Property[], which Elmas caused to be submitted to [the] Financial Institution[] on or about August 9, 2022." (*Id*.) Ultimately, the mortgage loan for the Property was approved and funded by the Financial Institution on August 18, 2022. (*Id*.)

On April 12, 2025, Elmas filed his Motion to Dismiss Count Eighteen of the Indictment (ECF No. 74), and Gallo filed his Motion to Dismiss shortly thereafter on April 14, 2025 (ECF

No. 75). The Government filed a joint opposition to Co-Defendants' Motions on May 6, 2025. (ECF No. 77.) Gallo and Elmas filed their respective replies on May 13, 2025. (ECF Nos. 78–79, 80.) The parties appeared in person for oral argument before this Court on June 3, 2025. (ECF No. 82.) With permission from the Court, the Government filed a supplemental opposition on June 11, 2025 (ECF No. 85), and Co-Defendants filed their respective replies on June 16, 2025 (ECF Nos. 87, 88).

## II. LEGAL STANDARD

"A motion to dismiss a criminal indictment [or certain counts therein] may be brought at any time before trial." *United States v. Hoffert*, No. 18-00073, 2018 WL 4829032, at *2 (W.D. Pa. Oct. 4, 2018), *aff'd*, 949 F.3d 782 (3d Cir. 2020) (citing Fed. R. Crim. P. 12(b)(3)). "In considering a defense motion to dismiss an indictment, the district court accepts as true the factual allegations set forth in the indictment." *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990). Federal Rule of Criminal Procedure 7(c)(1) provides an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." "While detailed allegations might well have been required under common-law pleading rules, . . . they surely are not contemplated by Rule 7(c)(1)[.]" *United States v. Resendiz-Ponce*, 549 U.S. 102, 110 (2007). Rather, the Third Circuit has stated:

> [A]n indictment [is] sufficient so long as it "(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a former acquittal or conviction in the event of a subsequent prosecution."

*United States v. Bergrin*, 650 F.3d 257, 264 (3d Cir. 2011) (alterations in original) (quoting *United States v. Vitillo*, 490 F.3d 314 (3d Cir. 2007)). "Moreover, 'no greater specificity than the statutory language is required so long as there is sufficient factual orientation to permit the defendant to

4

prepare his defense and to invoke double jeopardy in the event of a subsequent prosecution.'" *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007) (quoting *United States v. Rankin*, 870 F.2d 109, 112 (3d Cir. 1989)).

Federal Rule of Criminal Procedure 12(b)(3)(B) "permits a criminal defendant to move for the pre-trial dismissal of an indictment as defective if it, *inter alia*, lacks specificity or fails to state an offense." *United States v. Totoro*, No. 15-00291, 2017 WL 3189216, at *2 (E.D. Pa. July 27, 2017) (citing Fed. R. Crim. P. 12(b)(3)(B)(iii), (v)). "A district court may grant a pretrial motion to dismiss an indictment if the indictment's allegations do not suffice to charge an offense." *United States v. Jones*, 299 F. App'x 187, 189 (3d Cir. 2008). "To determine whether an indictment 'contains the elements of the offense intended to be charged,' a district court may look for more than a mere 'recit[ation] in general terms [of] the essential elements of the offense.'" *Bergrin*, 650 F.3d at 264 (alterations in original) (citation omitted). "A district court must find that 'a charging document fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." *Id*. at 264–65 (citation omitted). Additionally, "if an indictment fails to charge an essential element of the crime, it fails to state an offense." *United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) (citing *United States v. Wander*, 601 F.2d 1251, 1259 (3d Cir. 1979)).

Ordinarily, however, "the court may not predicate such a dismissal upon the insufficiency of the evidence to prove the indictment's charges." *Jones*, 299 F. App'x at 189. "A ruling on a motion to dismiss is not . . . 'a permissible vehicle for addressing the sufficiency of the government's evidence.'" *Bergrin*, 650 F.3d at 265 (quoting *United States v. DeLaurentis*, 230 F.3d 659, 660–61 (3d Cir. 2000)). "'Evidentiary questions'—such as credibility determinations and the weighing of proof—'should not be determined at th[is] stage.'" *Id.* (alteration in original)

5

(quoting *United States v. Gallagher*, 602 F.2d 1139, 1142 (3d Cir. 1979)); *see also DeLaurentis*, 230 F.3d at 660–61 ("Unless there is a stipulated record, or unless immunity issues are implicated, a pretrial motion to dismiss an indictment is not a permissible vehicle for addressing the sufficiency of the government's evidence. Federal Rule of Criminal Procedure 12(b)(2) authorizes dismissal of an indictment if its allegations do not suffice to charge an offense, but such dismissals may not be predicated upon the insufficiency of the evidence to prove the indictment's charges." (citations omitted)).

### III. DECISION

#### A. The "Crux" of the Alleged Fraud

Co-Defendants contend the Indictment fails to state an offense under 18 U.S.C. § 1028A because the identity theft was not at the "crux" of the alleged fraud. (ECF No. 75 at 3–8; ECF No. 74 at 3–5.) In making their respective arguments, Co-Defendants both rely on the Supreme Court decision in *Dubin v. United States*, 599 U.S. 110 (2023). (*Id.*)

In *Dubin*, the defendant challenged his aggravated identity theft conviction for inflating the value of services provided to a patient by a psychological services company by misrepresenting that the tests were performed by a licensed psychologist when, in actuality, the tests were performed by a licensed psychological associate. 599 U.S. at 114–15. The defendant was charged with healthcare fraud, a federal offense under 18 U.S.C. § 1347, and aggravated identity theft under 18 U.S.C. § 1028A. *Id*. Pursuant to 18 U.S.C. § 1028A(a)(1), a person is guilty of aggravated identity theft if "during an in relation to any [predicate offense], [the person] knowingly transfers, possesses, or uses, without lawful authority, a *means of identification* of another person[.]" *Id.* (emphasis added). The government argued that this provision was "automatically satisfied" because the defendant's "fraudulent billing included the patient's Medicaid reimbursement

6

number (a *'means of identification'*)." *Dubin*, 599 U.S. at 115 (emphasis added). Conversely, the defendant maintained that "using a means of identification in relation to a predicate offense requires 'a genuine nexus to the predicate offense.'" *Id*. at 117.

The Supreme Court agreed with the defendant's narrower reading of the statute, holding that the words "use" and "in relation to" in 18 U.S.C. § 1028A(a)(1) should not be construed so that the provision would "apply automatically any time a name or other means of identification happens to be part of the payment or billing method used in the commission of a long list of predicate offenses." *Id*. Instead, satisfying the provision requires the government demonstrate that the means of identification "is at the crux of what makes the conduct criminal." *Id*. at 131–32. The Court clarified that "being at the crux of the criminality requires more than a causal relationship, such as 'facilitation' of the offense or being a but-for cause of its 'success.'" *Id*. (citations omitted). Said another way, "the means of identification specifically must be used in a manner that is fraudulent or deceptive," such that it "can often be succinctly summarized as going to 'who' is involved." *Id*.

Here, Co-Defendants argue "Count Eighteen falls woefully short of *Dubin's* 'at the crux' test." (ECF No. 75 at 6; ECF No. 75 at 4–5.) Co-Defendants contend that the "crux" of the conspiracy to commit bank fraud is the safety attestation of the Property Manager—not the identity of the Property Manager in making the safety attestation. (*Id*.) "Under the [G]overnment's own allegations, the safety assertions, not the identity of the signer of the letter, was the 'crux' of the fraud." (ECF No. 75 at 7; *see also* ECF No. 74 at 4 ("By the [G]overnment's own account, the crux of the alleged misrepresentation goes to the safety of the balconies and the [P]roperty [M]anager's identity was merely ancillary.").) Gallo further relies on the Third Circuit's recent decision in *United States v. Weigand*, No. 23-02159, 2025 WL 1554931, at *2–3 (3d Cir. June 2,

7

2025), to demonstrate that crux of aggravated identity theft depends on the *who* element of the offense, not matters ancillary to the alleged fraud. (ECF No. 87 at 2 ("[T]he Indictment is clear that the 'crux' of the allegedly false statement was not *who* made it, but *what* it said about the *safety* of the balconies.").)

The Government responds that this Court should deny Co-Defendants' Motions both because the Government has yet to make a complete proffer of its evidence, and because in this case, the crux of the identity fraud was the question of "who signed the certification" attesting to the safety of the Property's balconies. (ECF No. 77 at 4–7; ECF No. 85 at 1–3.) The Government cites multiple cases wherein courts denied defendants' motions to dismiss based on the fact that the crux or linchpin of the crime was the misrepresentation as to "*who* received or performed a function," not "*how* or *when* a service was performed." (ECF No. 85 at 2 (citations omitted).)

In *Weigand*, the defendant "was convicted on all 30 counts across two consolidated cases, including convictions for aggravated identity theft and fraud offenses that resulted in substantial financial loss." 2025 WL 1554931, at *1. The defendant in *Wiegand* was a financial advisor who defrauded his clients of more than $574,000 by "impersonat[ing] clients, st[ealing] their identities, forg[ing] documents and signatures, fabricat[ing] financial statements, hack[ing] email accounts, and engag[ing] in various fraudulent activities to misappropriate client funds for his personal use." *Id*. The appeal centered around two victims: the first of which the defendant used her name, date of birth, and social security number to unknowingly open an account at Charles Schwab, further making two phone calls and placing a fax to Schwab, purporting to be the first victim; and the second, obtaining $229,000 from the second victim "under the false pretense of investing the funds, but instead us[ing] the money for his personal and business purposes." *Id*. The defendant

8

appealed his judgment of conviction and sentence based on the decision in *Dubin*, which defendant contended required vacating his aggravated identity theft convictions. *Id*. at *2.

The Third Circuit affirmed but also distinguished the Supreme Court's holding in *Dubin*, where the defendant's "misrepresentations went directly to the 'who' element that the Supreme Court identified as central to the offense." *Id*. at *3. The defendant "did not merely misrepresent the nature of extent of legitimate services he was providing to his client victim; rather, he misappropriated [the first victim's] identity to deceive Schwab about who was opening, accessing, and controlling the account without her authorization." *Id*. "This deception about identity was not merely incidental to the fraud but constituted its very essence—[the defendant] could not have executed his scheme without representing himself as [the first victim] to Charles Schwab." *Id*. Therefore, the Third Circuit found that the District Court had committed no error, and *Dubin* did not require the Third Circuit to vacate the defendant's aggravated identity theft convictions. *Id*.

This District Court has interpreted the holding in *Dubin*, as applied to an 18 U.S.C. § 1028(a)(7) charge for having "knowingly transfer[red], possesse[d], or use[d], without lawful authority, a means of identification of another person" with the intent to commit, or to air or abet, or in connection with, any unlawful activity." *See United States v. Johnston*, No. 20-00800, 2024 WL 4570681, at *1 (D.N.J. Oct. 24, 2024). The defendants in that case "allegedly conspired to use and caused others to use patients' identifying information without their knowledge or consent to submit false 'test claims,'" in order to "determine the insurance coverage costs for compounded medications." *Id*. Once the "test claims" had been adjudicated, the defendants allegedly reversed the claims and shredded all paper record to "maximize the insurance reimbursement" in order to "unlawfully enrich themselves." *Id*.

9

Even assuming, *arguendo*, that *Dubin* extended to 18 U.S.C. § 1028(a)(7), the District Court rejected the defendants' argument that the "'test claims' were not prescribed and the Indictment does not allege that defendants ever received money or property from the insurance benefit provider," and were therefore "not fraudulent and not at the 'crux' of the underlying criminal conduct." *Johnston*, 2024 WL 4570681, at *4 ("Courts have expressly rejected this argument and I do the same." (citing *United States v. Barnes*, No. 23-00113, 2024 WL 3409856, at *10–11 (E.D. Wis. July 15, 2024) (finding "[t]he defendant's use of [patients'] means of identification . . . at the crux of the defendant's alleged healthcare fraud because she effectively represented to Medicaid that the clients authorized her to seek payment for services rendered on a specific date, when they had not received services on that date and . . . had not authorized her to receive a related payment"))); *United States v. Boykins*, No. 23-00024, 2024 WL 3463955, at *7 (E.D. Va. July 17, 2024) (finding that defendant's "misappropriation of Medicaid recipient's identities to create false medical records and submit falsified billing records using their names for services they never received plainly is the key mover, or the crux of his healthcare fraud" (cleaned up)).

This Court finds the allegations in this matter similarly go to the *who* element that is central to the aggravated identity theft charge. Co-Defendants' actions in securing the mortgage explicitly relied on the identity of the Property Manager; if that were not the case, one of the Co-Defendants could have signed the letter attesting to the safety of the building's balconies.[2] Rather, Co-

---

[2] This directly opposes what the defendant in *Dubin* did. There, the defendant submitted claims for reimbursement to Medicaid for psychological testing by a licensed psychologist, when in fact, the claim overstated the qualifications of the employee who actually performed the testing, which inflated the amount of reimbursement. *Dubin*, 599 U.S. at 114–15. The government argued it was "a clear aggravated identity theft case," and that "§ 1028A(a)(1) was automatically satisfied because [the defendant]'s fraudulent billing included the patient's Medicaid reimbursement number (a 'means of identification')." *Id.* at 115. Therefore, the crux misrepresentation in *Dubin*

10

Defendants forged this safety attestation *from the Property Manager* because the Property Manager had the authority to confirm or deny the safety of the balconies. *See Dubin*, 599 U.S. at 131–32 ("[T]he means of identification specifically must be used in a manner that is fraudulent or deceptive. Such fraud or deceit going to identity can often be succinctly summarized as going to 'who' is involved."). Like in *Weigand*, Co-Defendants "could not have executed [their] scheme without representing [themselves] as" the Property Manager to the Financial Institution. *See Weigand*, 2025 WL 1554931, at *3.

Accordingly, this Court concludes the Co-Defendants' alleged conduct fits within the statutory definition of aggravated identity theft and constitutes the "crux" of the offense. Consequently, Co-Defendants' Motions to Dismiss Count Eighteen of the Indictment (Aggravated Identity Theft pursuant to 18 U.S.C. § 1028A(a)(1)) is **DENIED**.[3]

---

goes to the manner of billing—the defendant would receive a higher reimbursement rate if he represented (through the submission of claims) that the test was performed by a more qualified individual. *Id*. The misrepresentation and fraud had to do with the way the claims were submitted—not the individuals whose claims were being misrepresented. *Id*. However, here, the crux of this case hinges on the "means of identification," which is the statement made specifically by the Property Manager. Co-Defendants, or any other individual for that matter, could have made the same representation regarding the safety of the balconies to the Financial Institution with no effect. It was the fact that the *Property Manager* made the representation as to the safety of the balconies that caused the Financial Institution to approve Co-Defendants loan application.

[3] The Court recognizes the Government's argument regarding the timeliness of this motion. (*See* ECF No. 85 at 1 ("[T]he Government is unaware of a *single* decision in which a court, relying on *Dubin v. United States*, 599 U.S. 110 (2023), dismissed an aggravated identity theft charge prior to trial."); *see generally* ECF No. 82.) However, the Court declines to address this argument, as it has already determined that Co-Defendants' Motions are denied.

## IV. CONCLUSION

For the above reasons, Christopher J. Gallo's and Mehmet Ali Elmas's Motions to Dismiss (ECF Nos. 74, 75) Count Eighteen of the Indictment are **DENIED**. An appropriate Order follows.

**Date: July 16, 2025**     */s/ Brian R. Martinotti*
     **HON. BRIAN R. MARTINOTTI**
     **UNITED STATES DISTRICT JUDGE**