

Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, NJ 07602-0800
201.489.3000   201.489.1536  fax
—
New York
—
Delaware
—
Maryland
—
Texas
—
Florida
—
Washington, DC

Michael S. Weinstein
Member
Admitted in NJ, NY and DC

Reply to New Jersey Office
Writer's Direct Line: 201.525.6321
Writer's Direct Fax: 201.678.6321
Writer's E-Mail: MWeinstein@coleschotz.com

April 6, 2026

**Via CM/ECF Filing**
Honorable Brian Martinotti, U.S.D.J.
United States District Court for the District of New Jersey
U.S. Courthouse and Post Office
2 Federal Square
Newark, NJ 07101

      **Re:**    *USA v. Gallo*, **Crim. Action No. 24-712**

Dear Judge Martinotti:

This firm represents Defendant Christopher Gallo in the above-referenced matter. Counsel for Mr. Gallo respectfully submits this letter in response to CrossCountry Mortgage LLC's ("*CCM*") letter dated March 30, 2026 (Doc. No. 125), which attempts to invoke the Supreme Court's decision in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025) as purported support for its motion to intervene and vacate (the "*Motion*") (*see* Doc. No. 100) this Court's Order dated November 24, 2025 (the "*Order*") staying the AAA Arbitration (the "*Arbitration*"). For the reasons set forth below, there are significant factual and legal distinctions that render *Trump v. CASA* wholly inapposite to the circumstances presented here.

As an initial matter, we again note the exceptionally rare and unsupported request by CCM to intervene in a Federal criminal matter. As articulated at oral argument, Government counsel similarly objected to CCM's intervention effort. To permit a third party, here CCM, with only an economic interest to protect, to intervene in a criminal prosecution, thereby deprioritizing Defendant's basic Constitutional Rights, would be an astonishing turn of events.

***Trump v. CASA* Addresses Universal Injunctions Against Non-Parties, Not Stays Protecting Parties to This Court's Proceedings.**

In *Trump v. CASA*, the Supreme Court stated: "[t]he issue before us is one of remedy: whether, under the Judiciary Act of 1789, federal courts have equitable authority to issue universal injunctions." 606 U.S. at 839. The Supreme Court emphasized that "[t]he difference between a traditional injunction and a universal injunction is not so much *where* it applies, but *whom* it protects: A universal injunction prohibits the Government from enforcing the law against *anyone*, anywhere." *Id*. at 837, n.1 (emphasis in original). Universal injunctions are unquestionably not at

67775/0001-52849603

 COLE SCHOTZ P.C.

Hon. Brian Martinotti, U.S.D.J.
April 6, 2026
Page 2

issue here, as the Order is a targeted stay to protect the Constitutional Rights of a party before the Court.

In *Trump v. CASA*, the Court's concern was that universal injunctions "grant relief to nonparties" without affording those nonparties the procedural protections of Rule 23 class actions. *Id*. at 833-34. As the Court explained, "by forging a shortcut to relief that benefits parties and nonparties alike, universal injunctions circumvent Rule 23's procedural protections and allow courts to create *de facto* class actions at will." *Id*. at 849 (internal quotations omitted). Additionally, the Court noted that when a federal court enters a universal injunction against the Government, it "'improper[ly] intru[des]' on 'a coordinate branch of the Government' and prevents the Government from enforcing its policies against nonparties." *Id*. at 859 (alterations in original). None of these concerns are implicated here – a fact that CCM's letter fails to grapple with in any meaningful way. Instead, CCM simply asserts that the stay "unfairly impacted the rights of parties not otherwise before the Court." (Doc. No. 125 at p. 2.) But that assertion, creative as it may be, fundamentally mischaracterizes both the nature of this Court's Order and the concerns that animated *Trump v. CASA*.

First, this Court's Order does not extend relief to non-parties; it protects Mr. Gallo, a party who is squarely before this Court as a criminal defendant. The Supreme Court in *Trump v. CASA* made clear that federal courts have always possessed authority to "administer complete relief *between the parties*." 606 U.S. at 851 (emphasis in original). That is precisely what this Court has done by entering the Order. Indeed, both the Government and Mr. Gallo, the *parties*, oppose CCM's Motion as it seeks to interfere with the Court's ability to grant that complete relief.

Second, there is no Rule 23 class action circumvention concern here. Mr. Gallo is a single criminal defendant seeking to protect his Fifth Amendment rights during the pendency of this criminal proceeding. There is no "shortcut to relief that benefits parties and nonparties alike." *Id.* at 849.

Third, there is no separation of powers concern here. This Court is exercising its inherent authority and statutory authority under the All Writs Act to manage its own proceedings and protect the Constitutional Rights of a defendant in a criminal case pending before it. This is a core judicial function – not an intrusion on a coordinate branch of government.

Fourth, to the extent CCM is affected by this Court's stay, any such impact is precisely the type of incidental effect that *Trump v. CASA* acknowledged is permissible. The Supreme Court recognized that party-specific relief may sometimes "advantag[e] nonparties," but emphasized that such benefits are "only incidental[.]" *Id.* at 851. The Court's hypothetical is instructive: when a plaintiff sues a neighbor for playing loud music at night, an order directing the defendant to turn off the music will benefit surrounding neighbors, but "that benefit [is] merely incidental." *Id.* at 851-52 (alteration in original). Here, any impact on CCM as a result of the stay is similarly incidental to this Court's primary purpose of protecting Mr. Gallo's Constitutional Rights.

 COLE SCHOTZ P.C.

Hon. Brian Martinotti, U.S.D.J.
April 6, 2026
Page 3

**CCM Will Not Suffer Any Prejudice from This Court's Stay**

The Supreme Court in *Trump v. CASA* emphasized that courts have long recognized the principle that "injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Id.* at 852 (quoting *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979)). The Court's concern was that universal injunctions impose burdens on the Government and on third parties that extend far beyond what is necessary to protect the parties before the court. *Ibid*. The proportionality of relief to the harm suffered was central to the Court's analysis.

Applying this principle here, it is evident that CCM will suffer no prejudice from this Court's stay, and certainly nothing approaching the type of disproportionate burden that concerned the Supreme Court in *Trump v. CASA*. As set forth in further detail in Mr. Gallo's opposition to CCM's Motion, CCM waited eighteen months after terminating Mr. Gallo's employment before filing its arbitration demand. CCM cannot now credibly claim prejudice from the Court's temporary stay. Trial in the matter is currently set in August 2026, a mere four months away. CCM's claim of prejudice is further undermined by the nature of its alleged harm. CCM asserts only that it has a "genuine interest in the prompt resolution" of its arbitration demand and that its "financial interests" are prejudiced by delay. (*See* Doc. No. 100-2 at p. 6.) However, CCM points to no actual prejudice it would suffer – CCM's sole complaint is that it must wait to pursue its monetary claim. *Ibid*. This type of generic financial inconvenience cannot outweigh Mr. Gallo's Constitutional Rights. CCM's economic interests, stated or not, do not outweigh Mr. Gallo's Rights, whether they are derived in CCM's initiated arbitration or pending Federal trial.

In sum, the burden on CCM is minimal – a temporary delay in pursuing a monetary claim that CCM itself delayed in bringing for eighteen months – while the protection afforded to Mr. Gallo is essential to safeguarding his Constitutional Rights and importantly, a fair trial. This is precisely the type of proportionate, party-specific relief that *Trump v. CASA* affirmed is within a court's authority to grant. 606 U.S. at 851.

**The Court's Authority Here Derives from Its Inherent Powers and the All Writs Act – Not the Judiciary Act's Equitable Remedies**

*Trump v. CASA* addressed the scope of equitable remedies available under the Judiciary Act of 1789 when courts issue injunctions against the Government to benefit non-parties. *Id.* at 837. This Court's stay of the Arbitration, by contrast, is grounded in the Court's inherent authority to manage its own proceedings and protect them from prejudicial outside interferences, as well as the Court's statutory authority under the All Writs Act. (*See generally* Doc. No. 108.)

Critically, this Court does not need to rely on the Judiciary Act of 1789 – the very statute at issue in *Trump v. CASA* – to justify its Order. As CCM acknowledges, the Supreme Court's analysis in *Trump v. CASA* centered on the historical scope of equitable remedies available in the High Court of Chancery in England at the time of the founding, and whether the Judiciary Act of 1789 incorporated authority for courts to issue universal injunctions. *See* 606 U.S. at 840-48. That historical inquiry is simply irrelevant here because this Court's authority derives from entirely independent sources: the inherent powers of federal courts and the explicit statutory grant of

 COLE SCHOTZ P.C.

Hon. Brian Martinotti, U.S.D.J.
April 6, 2026
Page 4

authority in the All Writs Act. (*See generally* Doc. No. 108.) Neither source was at issue in *Trump v. CASA*, and neither is subject to the historical limitations on equity jurisdiction that concerned the Supreme Court in that case.

**The Stay Is Necessary to Protect Mr. Gallo's Constitutional Rights**

As set forth in further detail in Mr. Gallo's Opposition to the Motion (*see* Doc. No. 108), the stay is essential to protect Mr. Gallo's Constitutional Rights – and those rights must take precedence over CCM's belatedly asserted financial interests. The record demonstrates substantial overlap between the criminal proceedings and the Arbitration. Even if the parties quibble over the definition of substantial, why should any overlap be permitted and infringe upon the fairness and ability of Mr. Gallo to present a defense? Indeed, the circumstances surrounding CCM's termination of Mr. Gallo – and therefore its demand for repayment of the signing bonus – are undisputedly related to the criminal allegations. Mr. Gallo should not be forced to choose between mounting a full defense to the Arbitration and asserting his Constitutionally protected Fifth Amendment rights.

**Conclusion**

For the foregoing reasons, *Trump v. CASA* is inapposite to this Court's stay of the Arbitration. That decision addressed universal injunctions granting relief to non-parties under the Judiciary Act's equitable authority. 606 U.S. at 837. This Court's stay, by contrast, is a protective measure grounded in the Court's inherent authority and the All Writs Act to safeguard the Constitutional Rights of a party before this Court. For those reasons and the reasons set forth in Mr. Gallo's Opposition, CCM's motion should be denied.

As always, the Court's time and attention to this matter are greatly appreciated.

Respectfully submitted,

COLE SCHOTZ P.C.

*/s/ Michael S. Weinstein*

Michael S. Weinstein

MSW:cjc

cc: All Counsel of Record (via PACER ECF)

67775/0001-52849603