<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>CHRISTOPHER J. GALLO and<br>MEHMET ALI ELMAS,<br><br>Defendants. | Case No. 2:24-cr-00712 (BRM)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Third-Party CrossCountry Mortgage's ("CCM") Motion to Intervene and Vacate[1] (the "Motion") (ECF No. 100) the Court's November 24, 2025 Order (ECF No. 99). Defendant Christopher J. Gallo ("Defendant") filed an Opposition (ECF No. 108), which the Government joined (ECF No. 112). CCM filed a Reply. (ECF No. 116.) Having reviewed and considered the submissions filed in connection with the Motion and having held oral argument on March 26, 2026 (ECF No. 124), for the reasons set forth below and for good cause having been shown, the Motion is **GRANTED IN PART** and **DENIED IN PART**.

---

[1] CCM's Motion to Vacate does not specify the rule under which it moves to vacate the November 24, 2025 Order. (*See generally* ECF No. 100.) Neither the Federal Rules of Civil Procedure nor the Local Civil Rules expressly authorizes a "motion to vacate." *See, e.g.*, Fed. R. Civ. P. 55 (Setting Aside a Default or a Default Judgment), 59 (Altering or Amending a Judgment), 60 (Relief From a Judgment or Order); L. Civ. R. 7.1(i) (Motions for Reconsideration). Local Civil Rule 7.1(i), however, is the appropriate rule governing reconsideration of an interlocutory order in a criminal action, such as the November 24, 2025 Order. *See United States v. Rensing*, 12-663, 2022 WL 3227131, at *2 (D.N.J. Aug. 10, 2022); *see also Gillespie v. Newark Bd. of Educ.*, Civ. A. No. 21-18990, 2024 WL 4867025, at *2 n.5 (D.N.J. Nov. 22, 2024). Accordingly, the Court construes CCM's "Motion to Vacate" as a motion for reconsideration of the November 24, 2025 Order under Local Rule 7.1(i).

1

## I.  BACKGROUND

CCM is a national residential mortgage lender. (ECF No. 100-2 at 2.) Between September 5, 2023, and April 24, 2024, Defendant was employed as an Originating Branch Manager at CCM. (ECF No. 108 at 4; *see also* ECF No. 100-3.) Prior to his employment with CCM, Defendant was employed as a Senior Loan Officer at NJ Lenders Corp. ("NJL"). (ECF No. 108 at 4.)

On September 5, 2023, CCM and Defendant entered into a bonus agreement (the "Bonus Agreement") (ECF No. 100-3 at 32–35), pursuant to which, CCM agreed to pay Defendant a $2,100,000 sign-on bonus, which was contingent on his continuous employment for thirty-six months (the "Vesting Period"). (*Id.* at 32.) The sign-on bonus was a "recoverable bonus," which was to be returned in full if Defendant's employment with CCM was terminated prior to the completion of the Vesting Period. (*Id.*) The Bonus Agreement includes an arbitration clause (the "Arbitration Clause"), under which CCM and Defendant agreed any disputes arising out of or relating to the Bonus Agreement would be resolved "by binding arbitration administered by the American Arbitration Association ('AAA')." (*Id.* at 100-3 at 34.)

On April 24, 2024, Defendant was arrested and charged with conspiracy to commit bank fraud in violation of 18 U.S.C. § 1349. (ECF No. 1 at 2.) The conspiracy allegedly occurred while Defendant was employed as a Senior Loan Officer at NJL prior to September 2023.[2] (*Id.* at 3.) That same day, and as a result of his arrest, CCM terminated Defendant. (ECF No. 100-2 at 2.)

On November 7, 2025, CCM initiated arbitration by filing a statement of claim with AAA, Case No. 01-25-0005-5239 (the "AAA Arbitration"). (*Id.* at 1, 3.) In response, Defendant filed a

---

[2] In September 2024, Defendant filed a civil complaint against NJL in the Superior Court of New Jersey, Law Division, alleging a breach of contract claim. (*See* BER-L-5138-24, Trans ID: LCV20242152605.) Defendant and the Government subsequently moved to stay the civil matter. (*Id.*, Trans ID: LCV20243162066). On January 3, 2025, the Superior Court stayed the action pending the resolution of the criminal matter due to the risk of overlapping discovery, witnesses, and defenses. (*Id.*, Trans ID: LCV202520383).

proposed order enjoining and staying the AAA Arbitration pending the resolution of this action (the "Criminal Action") on November 21, 2025 (the "Request to Stay").[3] (ECF No. 98.) On November 24, 2025, the Court entered an Order enjoining and staying the AAA Arbitration. (ECF No. 99; *see also* ECF No. 110 (stating the AAA Arbitration had been stayed pending resolution of the Criminal Action).)

On December 3, 2025, CCM filed the Motion. (ECF No. 100.) Defendant filed an Opposition on December 19, 2025 (ECF No. 108), which the Government subsequently joined on January 9, 2026 (ECF No. 112). CCM filed a Reply on January 20, 2026. (ECF No. 116.)

On March 26, 2026, the Court conducted oral argument, during which the Court ordered additional briefing on the potential application of the recent Supreme Court decision in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025). (*See* ECF No. 124.) CCM filed its supplemental briefing on March 30, 2026 (ECF No. 125), and Defendant filed his on April 6, 2026 (ECF No. 128).[4]

---

[3] Defendant filed the Request to Stay on behalf of both himself and the Government (ECF No. 98 at 2), which included a proposed order (ECF No. 98-1). The proposed order states the request was granted "[u]pon the application of the United States of America, by Alina Habba, Acting United States Attorney and Special Attorney to the United States Attorney General (Christopher Fell, Assistant U.S. Attorney, appearing), and [D]efendant." (*Id.*) Habba subsequently resigned and Robert Frazer was appointed as the United States Attorney for the District of New Jersey. *See United States v. Naviwala*, Crim. A. No. 24-099, 2026 WL 1031149, at *3 (D.N.J. Apr. 16, 2026). At the time the Request to Stay was filed, however, Habba was not the Acting United States Attorney. *See United States v. Giraud*, 160 F.4th 390, 406 (3d Cir. 2025) (disqualifying Habba). In support of the Motion to Vacate, CCM questions "what, if any, impact this disqualification has." (ECF No. 100 at 8.) However, as the Court may review Defendant's Request to Stay notwithstanding the Government's joining of same, the Court need not consider the effect of Habba's disqualification on the November 24, 2025 Order. But, in fairness to CCM and in the interest of justice, the Court reconsiders the Request to Stay without consideration to the Government's support of same.

[4] Reviewing the parties' supplemental briefings, the Court finds the Supreme Court's decision in *Trump* to be distinguishable from the issues of fact and law in this action. *Compare infra* Section II.C (granting a request to stay an interrelated arbitration pending the resolution of a criminal action under the All Writs Act), *with Trump*, 606 U.S. 831 (reviewing whether a universal injunction may be granted under the Judiciary Act of 1789).

## II.    DECISION

CCM moves to intervene, requesting the Court to reconsider and vacate the November 24, 2025 Order enjoining and staying the AAA Arbitration. (ECF No. 100.) CCM argues the Court should not have enjoined and stayed the AAA Arbitration.[5] (ECF No. 100-2 at 4–6). In response, Defendant argues CCM lacks standing to intervene in the Criminal Action (ECF No. 108 at 10–11) and the Court did not abuse its discretion in enjoining and staying the AAA Arbitration (*id.* at 21–23, 27–28).

### A.    Motion to Intervene

"There is no provision in the Federal Rules of Criminal Procedure for intervention by a third party in a criminal proceeding; intervention in civil proceedings is governed by Rule 24 of the Federal Rules of Civil Procedure, which does not apply in a criminal case." *United States v. Rashid*, Crim. A. No. 95-264, Civ. A. No. 95-7396, 2009 WL 723382, at *3 (E.D. Pa. Mar. 17, 2009), *aff'd*, 373 F. App'x 234 (3d Cir. 2010) (quoting *United States v. Kollintzas*, 501 F.3d 796, 800 (7th Cir. 2007)); *accord United States v. Fishoff*, Crim. A. No. 15-586, 2016 WL 4414780, at *2 (D.N.J. Aug. 16, 2016). However, the courts have recognized a district court may permit a third party to appear in a criminal proceeding under certain circumstances as part of its inherent power to manage its dockets if the third party's "constitutional or other federal rights are implicated by the resolution of a

---

[5] CCM also argues the Court lacked the authority to enjoin or stay the AAA Arbitration. (*See* ECF No. 100-2 at 3–4, 7–8). Pursuant to the All Writs Act, however, a district court "unquestionably" has the authority to enjoin and stay a proceeding, including an arbitration, which "threaten[s] to interfere with its jurisdiction over a pending criminal case." *United States v. Fin. Indus. Regul. Auth. (FINRA)*, 607 F. Supp. 2d 391, 393 (E.D.N.Y. 2009) (citing 28 U.S.C. § 1651(a)); *see also ITT Community Dev. Corp. v. Barton*, 569 F.2d 1351 (5th Cir. 1978) (describing the authority conferred under the All Writs Act as "extraordinary"). The Court's authority to enjoin or stay an arbitration under the All Writs Act is limited by neither the location of the proceeding nor the parties involved. *See FINRA*, 607 F. Supp. 2d at 392 (exercising authority over proceedings involving non-parties); *Saleh v. Titan Corp.*, 353 F. Supp. 2d 1087, 1089 (S.D. Cal. 2004) (exercising authority over proceedings in other federal forums).

4

particular motion, request, or other issue during the course of a criminal case." *Fishoff*, 2016 WL 4414780, at *2 (quoting *United States v. Collyard*, Crim A. No. 12-058, 2013 WL 1346202, at *2 (D. Minn. Apr. 3, 2013)); *see also, e.g.*, *United States v. Wecht*, 537 F.3d 222, 232 (3d Cir. 2008) (permitting intervention by a third party seeking to assert a right of access to criminal proceedings under First Amendment); *United States v. RMI Co.*, 599 F.2d 1183, 1186 (3d Cir. 1979) (permitting intervention by a third party seeking to protect privileged information).

Here, CCM moves to intervene claiming it has a federal right to enforce the Arbitration Clause within the Bonus Agreement, which was implicated by the November 24, 2025 Order. (ECF No. 100-2 at 1 n.1; ECF No. 116 at 9–10.) In response, Defendant argues motions to intervene have been granted only under limited circumstances, which have not included enforcing an arbitration agreement. (*See* ECF No. 108 at 10–11.) However, Defendant does not cite to, nor has this Court found, any caselaw stating the Court cannot grant a motion to intervene to enforce an arbitration agreement (*see generally id.*), which is a federal right under the Federal Arbitration Act, 9 U.S.C. §§ 1–16. *See Olde Disc. Corp. v. Tupman*, 1 F.3d 202, 208 (3d Cir. 1993). Accordingly, CCM may intervene for the limited purpose of responding to the Request to Stay the AAA Arbitration and the November 24, 2025 Order granting same. *See Fishoff*, 2016 WL 4414780, at *2 (granting a non-party leave to intervene for the limited purpose of opposing a motion concerning allegedly privileged materials in which the intervenor retained a property interest).

Based on the foregoing, CCM's Motion (ECF No. 100) is **GRANTED** to the extent it requests intervention in this action for the limited purpose of responding to the Request to Stay the AAA Arbitration and the November 24, 2025 Order granting same.

### B. Motion to Reconsider

Although a motion for reconsideration is not expressly authorized by the Federal Rules of Criminal Procedure, "the Third Circuit has recognized that such motions may be filed in criminal

matters." *United States v. Rensing*, 12-663, 2022 WL 3227131, at *2 (D.N.J. Aug. 10, 2022) (citing

*United States v. Fiorelli*, 337 F.3d 282, 286 (3d Cir. 2003)). "[R]econsideration is an extraordinary

remedy, that is granted 'very sparingly.'" *Brackett v. Ashcroft*, Civ. A. No. 03-3988, 2003 WL

22303078, at *2 (D.N.J. Oct. 7, 2003) (quoting *Interfaith Cmty. Org. v. Honeywell Int'l Inc.*, 215 F.

Supp. 2d. 482, 507 (D.N.J. 2002)); *see also Rensing*, 2022 WL 3227131, at *3 (permitting a party to

file a motion for reconsideration in a criminal action under both Federal Rule of Civil Procedure 59

and Local Civil Rule 7.1(i)); *McKinney v. Fitzgerald*, Civ. A. No. 18-12987, 2024 WL 1344022, at

*1 (D.N.J. Mar. 5, 2024) (noting the standard for reconsideration is identical under both Federal Rule

of Civil Procedure 59 and Local Civil Rule 7.1(i)).

A motion for reconsideration "may not be used to relitigate old matters, nor to raise

arguments or present evidence that could have been raised prior to the entry of judgment." *P.

Schoenfeld Asset Mgmt., LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001). "The

purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly

discovered evidence." *Danise v. Saxon Mortg. Servs. Inc.*, 738 F. App'x 47, 52 (3d Cir. 2018)

(quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)).

To prevail on a motion for reconsideration, the moving party must show at least one of the

following grounds: "(1) an intervening change in the controlling law; (2) the availability of new

evidence that was not available when the court [made its initial decision]; or (3) the need to correct

a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou-Ann,

Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). A court commits clear error of law "only if the

record cannot support the findings that led to that ruling." *ABS Brokerage Servs. v. Penson Fin.

Servs., Inc.*, Civ. A. No. 09-4590, 2010 WL 3257992, at *6 (D.N.J. Aug. 16, 2010) (citing *United

States v. Grape*, 549 F. 3d 591, 603–04 (3d Cir. 2008)). Accordingly, a party must demonstrate "(1)

the holdings on which it bases its request were without support in the record, or (2) would result in

6

'manifest injustice' if not addressed." *Id.* Moreover, when the assertion is that the Court overlooked something, the Court must have overlooked some dispositive factual or legal matter that was presented to it. *See* L. Civ. R. 7.1(i); *see also Bowers v. Nat'l Collegiate Athletic Ass'n*, 130 F. Supp. 2d 610, 612 (D.N.J. 2001) ("The word 'overlooked' is the operative term in the Rule.").

In short, "[m]ere 'disagreement with the Court's decision' does not suffice." *ABS Brokerage Servs.*, 2010 WL 3257992, at *6 (quoting *P. Schoenfeld*, 161 F. Supp. 2d at 352); *see also United States v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999) ("Mere disagreement with a court's decision normally should be raised through the appellate process and is inappropriate on a motion for [reconsideration]."); *Schiano v. MBNA Corp.*, Civ. A. No. 05–1771, 2006 WL 3831225, at *2 (D.N.J. Dec. 28, 2006) ("Mere disagreement with the [c]ourt will not suffice to show that the [c]ourt overlooked relevant facts or controlling law and should be dealt with through the normal appellate process." (citations omitted)).

Here, CCM moves to reconsider and vacate the November 24, 2025 Order staying the AAA Arbitration. (*See* ECF No. 100.) In support, CCM claims it was provided neither notice of the request to stay nor a reasonable opportunity to respond prior to the entry of the November 24, 2025 Order (ECF No. 100-2 at 3, 7), which Defendant does not contest (*see generally* ECF No. 108). CCM, "although a nonparty, should have been provided an opportunity to respond and present defenses." *See United States v. Patel*, Crim. A. No. 20-613, 2022 WL 2274469, at *2 (D.N.J. June 23, 2022). Accordingly, having determined CCM has a federal right to arbitration, which will be implicated if the request to stay is granted, the Court reconsiders the request to stay in fairness to CCM and in the interest of justice. *See Max's Seafood Café*, 176 F.3d at 677 (holding reconsideration to be proper to correct a clear error of law or to prevent manifest injustice).

Based on the foregoing, CCM's Motion (ECF No. 100) is **GRANTED** to the extent it requests reconsideration of the November 24, 2025 Order.

7

C.      **Motion to Vacate**

The All Writs Act provides district courts with the authority to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "The All Writs Act confers on courts 'extraordinary powers' that are 'firmly circumscribed.'" *Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 328 (3d Cir. 2007) (quoting *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1132 (11th Cir. 2005)). The district courts have frequently utilized the All Writs Act to enjoin and stay civil proceedings, including arbitrations, which "threaten to interfere with its jurisdiction over a pending criminal case." *See United States v. Fin. Indus. Regul. Auth. (FINRA)*, 607 F. Supp. 2d 391, 393 (E.D.N.Y. 2009) (noting a district court "unquestionably" has the authority to stay an arbitration under the All Writs Act (citing *United States v. Eberhard*, Crim. A. No. 03-562, 2004 WL 616122, at *3 n.6 (S.D.N.Y. Mar. 30, 2004)); *accord Grider*, 500 F.3d at 328.

A stay of a civil proceeding is an "extraordinary remedy," which may be warranted only under certain circumstances in the interests of justice. *See Walsh Sec., Inc. v. Cristo Prop. Mgmt., Ltd.*, 7 F. Supp. 2d 523, 526 (D.N.J. 1998). "For example, courts have found stays appropriate where denial would impair a party's Fifth Amendment privilege, extend the limits of criminal discovery, expose the defense's legal theories, or otherwise prejudice the criminal case." *Frantatoro v. Grabato*, Civ. A. No. 23-053, 2023 WL 5605669, at *3 (D.N.J. Aug. 30, 2023). To determine whether to stay a civil proceeding pending the resolution of a pending criminal proceeding, the district court reviews the following six factors:

> (1) the extent to which the issues in the criminal and civil cases overlap; (2) the status of the case, including whether the defendants have been indicted; (3) the plaintiff's interest in proceeding expeditiously weighed against the prejudice to plaintiff caused by a delay; (4) the private interests of and burden on defendants; (5) the interests of the court; and (6) the public interest.

*Walsh*, 7 F. Supp. 2d at 526–27. In weighing the competing interests, the court must "maintain an even balance." *Dotts v. Romano*, Civ. A. No. 17-431, 2020 WL 1130207, at *2 (D.N.J. Mar. 9, 2020) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)). The moving party bears the burden of demonstrating a stay of the civil proceeding is warranted under the circumstances. *Id.* (citing *Nken v. Holder*, 556 U.S. 418, 433–34 (2009)). The Court addresses each factor in turn.

### 1.    Extent of Overlap

The first factor requires a court to consider the extent of overlap between the criminal and civil proceedings, which "has been termed the most important issue at the threshold." *Walsh*, 7 F. Supp. 2d at 527 (quoting Milton Pollack, *Parallel Civil & Criminal Proceedings*, 129 F.R.D. 201, 203 (1989)). The courts have typically held the first factor favors granting a stay of a civil proceeding if both the criminal and civil proceedings "stem from the same or interrelated events." *Frantatoro*, 2023 WL 5605669, at *4 (citing *United States Sec. & Exch. Comm'n v. Ott*, Civ. A. No. 06-4195, 2006 WL 8462454, at *3 (D.N.J. Nov. 30, 2006)). To make this determination, courts have generally reviewed whether the same conduct "will be relevant to both [proceedings]," *i.e.*, "the civil and criminal [proceedings] are likely to share common witnesses and documents." *United States v. All Articles of Other-Sonic Gneric Ultrasound Transmission Gel* ("*All Articles*"), Civ. A. No. 12-2264, 2013 WL 1285413, at *2 (D.N.J. Mar. 27, 2013).

Here, Defendant argues the Criminal Action and AAA Arbitration stem from the same or interrelated events. (ECF No. 108 at 6–7.) In support of his argument, Defendant notes CCM has provided more than 68,000 documents in response to subpoenas in this matter and CCM employees may be called at trial to testify relating to his employment at CCM. (*Id.* at 6.) In response, CCM claims these proceedings are distinct and separate as the Criminal Action arises from the conspiracy to commit bank fraud, which allegedly concluded prior to his employment at CCM, and the AAA Arbitration arises from the failure to repay the $2,100,000 sign-on bonus. (*See* ECF No. 116 at 6–8.)

Both the Criminal Action and the AAA Arbitration stem from interrelated events. The record establishes Defendant entered into the Bonus Agreement on September 5, 2023. (*See* ECF No. 100-3 at 32.) Pursuant to the Bonus Agreement, CCM agreed to pay Defendant a $2,100,000 sign-on bonus. (*Id.* at 32.) The sign-on bonus was a "recoverable bonus," however, which was to be returned in full if Defendant's employment with CCM was terminated within thirty-six months of his hiring. (*Id.*) Defendant was subsequently arrested and, as a result, CCM immediately terminated Defendant, which triggered CCM's right to recover the sign-on bonus under the Bonus Agreement. (ECF No. 100-3 at 32–33.) CCM does not claim Defendant was terminated for any reason other than his arrest. (ECF No. 100-2 at 5.) Although the Court recognizes the claims involved in the Criminal Action and the AAA Arbitration may be distinct and separate causes of action, there is no question these proceedings stem from interrelated events. *See Frantatoro*, 2023 WL 5605669, at *4. Accordingly, the Court finds the first factor weighs in favor of staying the AAA Arbitration.

**2.    Status of Parallel Criminal Case**

The second factor requires a court to consider "the status of the criminal proceeding." *Frantatoro*, 2023 WL 5605669, at *4. The courts have generally denied a pre-indictment request to stay a civil proceeding and granted a post-indictment request. *See Walsh*, 7 F. Supp. 2d at 527 ("The strongest case for a stay of discovery in the civil case occurs during a criminal prosecution after an indictment is returned." (quoting *Parallel Civil & Criminal Proceedings*, 129 F.R.D. at 203)). At this stage, the potential harm to a criminal defendant arising from self-incrimination is greater, whereas the potential harm to a civil litigant arising from delay "is reduced due to the promise of a fairly quick resolution of the criminal [proceeding]." *See id.* (internal quotation marks omitted) (noting "answers and document discovery present little danger" but "interrogatory and deposition discovery poses a substantial risk of self-incrimination"). A civil litigant may overcome this strong presumption in favor of staying the civil proceeding under the second factor, however, if the litigant

10

can establish the defendant has waived his Fifth Amendment privilege in the criminal proceeding. *See Colombo v. Bd. of Educ. for the Clifton Sch. Dist.*, Civ. A. No. 11-785, 2011 WL 5416058, at *4 (D.N.J. Nov. 4, 2011).

Neither Defendant nor CCM argue whether the second factor should weigh in favor of or against staying the AAA Arbitration. (*See generally* ECF Nos. 100, 108, 116.) The record, however, establishes the statement of claim was filed with AAA approximately eighteen months post-indictment. (ECF No. 108 at 28.) Accordingly, the Court finds the second factor weighs in favor of staying the AAA Arbitration.

### 3.      Prejudice to the Civil Litigant

The third factor requires a court to consider the prejudice to the civil litigant caused by a delay. *Walsh*, 7 F. Supp. 2d at 526–27. The mere passage of time, however, cannot establish prejudice to a civil litigant. *Colombo*, 2011 WL 5416058, at *4; *see also Walsh*, 7 F. Supp. 2d at 528 ("Delays in civil [proceedings] are fairly common, however."). Rather, to establish prejudice, the civil litigant "must show a unique injury such as fading memories, asset dissipation, or an attempt to gain an unfair advantage from the stay." *Colombo*, 2011 WL 5416058, at *4. Courts have generally held absent a unique injury, the third factor favors granting a stay of the civil proceeding. *See Walsh*, 7 F. Supp. 2d at 528.

Here, Defendant argues CCM will not be prejudiced by a stay of the AAA Arbitration. (ECF No. 108 at 27–28.) In support of same, Defendant notes CCM waited eighteen months to initiate the AAA Arbitration. (*Id.* at 28.) In response, CCM argues it will be prejudiced due to the "unnecessary delay" to recover the sign-on bonus. (ECF No. 116 at 8–9.) CCM does not claim it will suffer a unique injury as a result of the stay. (*Id.*.)

However, "[d]elays in civil [proceedings] are fairly common." *Walsh*, 7 F. Supp. 2d at 528. Absent a unique injury, the mere passage of time alone cannot establish prejudice to a civil litigant.

11

*See Colombo*, 2011 WL 5416058, at \*4. Accordingly, the Court finds the third factor weighs in favor of staying the AAA Arbitration.

### 4.    Prejudice to the Criminal Defendant

The fourth factor requires a court to consider the interests of the criminal defendant. *Walsh*, 7 F. Supp. 2d at 526–27. Although the Supreme Court has held it is not unconstitutional to force a criminal defendant to choose between either waiving his Fifth Amendment privilege and defending himself in a civil proceeding or asserting the privilege and (probably) losing the civil proceeding, *see id.* at 528, courts have generally recognized such a choice to be a significant burden on the defendant under the fourth factor, *see Frantatoro*, 2023 WL 5605669, at \*6; *Colombo*, 2011 WL 5416058, at \*5. Courts have also recognized the risks of piecemeal litigation, discovery disputes, and inconsistent rulings to be prejudicial to the interests of a defendant. *See Frantatoro*, 2023 WL 5605669, at \*6.

Here, Defendant argues he will be prejudiced if he is required to defend himself simultaneously in the Criminal Action and the AAA Arbitration as he has not waived his Fifth Amended privilege in the Criminal Action. (*See* ECF No. 108 at 6–7, 13–14, 16, 22–23.) CCM disagrees. (*See* ECF No. 116 at 8–9 ("The only party facing prejudice . . . is CCM . . . .").) However, CCM fails to establish Defendant has waived his Fifth Amendment privilege in the Criminal Action. (*See generally* ECF Nos. 100, 116.) Therefore, the Court recognizes the existence of a significant burden on Defendant to choose between the possibility of self-incrimination or the probability of losing the civil proceeding. *See Frantatoro*, 2023 WL 5605669, at \*6; *Colombo*, 2011 WL 5416058, at \*5. Accordingly, the Court finds the fourth factor weighs in favor of staying the AAA Arbitration.

### 5.    Interests of the Court

The fifth factor requires a court to consider "the interests of the court." *Walsh*, 7 F. Supp. 2d at 526–27. It is well-established a court "has an interest in managing its cases efficiently."

*Frantatoro*, 2023 WL 5605669, at *6 (citing *Walsh*, 7 F. Supp. 2d at 528). Courts have generally favored staying a civil proceeding stemming from the same or interrelated events as a pending criminal proceeding under the fifth factor based on the "reasonable expectation that the criminal investigation could clarify and define some issues in the civil [proceeding]." *Colombo*, 2011 WL 5416058, at *6 (quoting *Ott*, 2006 WL 8462454, at *3); *see also Sec. & Exch. Comm'n v. Schiff*, Civ. A. No. 05-4132, 2006 WL 2690266, at *1–2 (D.N.J. Sept. 19, 2006) (holding a stay promotes judicial efficiency if the criminal prosecution may address, resolve, and clarify common issues).

Here, Defendant argues the AAA Arbitration affects the interests of the Court as the two proceedings are interrelated. (*See* ECF No. 108 at 16–17.) In response, CCM argues the AAA Arbitration will have no bearing upon the Criminal Action as the two are distinct and separate. (*See* ECF No. 116 at 9.) Having determined the Criminal Action and the AAA Arbitration stem from interrelated events, *see supra* Section III.C.5, the Criminal Action may define or clarify some common issue in the AAA Arbitration, *Colombo*, 2011 WL 5416058, at *6. Accordingly, the Court finds the fifth factor weighs in favor of staying the AAA Arbitration.

### 6.    Public Interest

The sixth factor requires a court to consider the "public interest." *Walsh*, 7 F. Supp. 2d at 526–27. "There is no harm to the public interest," however, "in granting a stay of [a] civil [proceeding]." *Id.* at 529. Although courts have recognized "the public has an interest in expeditious resolution of civil [proceedings]," courts have also recognized "the public has a greater interest in the Government's ability to enforce and investigate criminal activity." *Frantatoro*, 2023 WL 5605669, at *6; *see also Colombo*, 2011 WL 5416058, at *6 ("The public interest is promoted by allowing a complete, unimpeded criminal investigation."). Therefore, under the sixth factor, "substantial weight should be given to the public interest in balancing the policy against the right of

a civil litigant to a reasonably prompt determination of [its] civil claims or liabilities." *All Articles*, 2013 WL 1285413, at \*4; *accord Frantatoro*, 2023 WL 5605669, at \*6.

Here, Defendant argues CCM's interest in an expeditious resolution of its' civil claims does not outweigh the public's interest in the proper adjudication of criminal claims (*see* ECF No. 108 at 27), which CCM contests (*see* ECF No. 116 at 10). However, "[t]here is no harm to the public interest in granting a stay of [a] civil [proceeding]." *Walsh*, 7 F. Supp. 2d at 529. Accordingly, the Court finds the sixth factor weighs in favor of staying the AAA Arbitration.

Balancing all of the above factors supports granting the Request to Stay. Accordingly, the AAA Arbitration is stayed pending completion of the Criminal Action.

Based on the foregoing, CCM's Motion (ECF No. 100) is **DENIED** to the extent it requests the Court to vacate the November 24, 2025 Order.

III.    CONCLUSION

For the reasons set forth above, and for good cause appearing, CCM's Motion (ECF No. 100) is **GRANTED IN PART** and **DENIED IN PART**. An appropriate order follows.

Dated: June 12, 2026                      */s/ Brian R. Martinotti*
                                          **HON. BRIAN R. MARTINOTTI**
                                          **UNITED STATES DISTRICT JUDGE**

14